IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSE A. CAMACHO, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. H-05-949 |
| | § | |
| UNITED STATES CITIZENSHIP | § | |
| AND IMMIGRATION SERVICES, | § | |
| | § | |
| Respondent. | § | |

## ORDER

Pending before the Court is the Petition for Review (Instrument No. 1) filed by Jose A. Camacho ("Camacho") and the Memorandum in Support of its Denial of Naturalization Under 8 U.S.C. § 1440 (Instrument No. 19) filed by the United States Citizenship and Immigration Services. Having reviewed the petition and memorandum in opposition, the Court determines Camacho's petition should be denied and the decision of the Citizenship and Immigration Services District Director should be affirmed.

## BACKGROUND

On March 21, 2005, Camacho filed the instant petition for review, seeking to have the November 16, 2004 and April 27, 2005 denials of his naturalization application overturned. On May 6, 2005, the Immigration and Naturalization Service

filed a one-page motion for summary judgment, attaching the administrative record and essentially asking the Court to affirm the administrative decisions below.  On July 22, 2005, the Court held a hearing and discussed all pending motions in the case with the parties.  Subsequently, the Court denied the Immigration and Naturalization Service's motion for summary judgment without prejudice to re-filing and denied Camacho's requests to appoint counsel and to be released.  However, the Court granted a stay of deportation pending the resolution of the instant action concerning denial of naturalization.[1]

In his petition for review of the denial of his naturalization application, Camacho alleges he lawfully immigrated to the United States with his parents and siblings in 1968.[2]  Camacho joined the military and served during the Vietnam conflict.[3]  Camacho received honorable discharges from both the Army and Navy.  Camacho argues he took oaths while in the military that were essentially the same oaths one would take to

---

[1]Removal proceedings against Camacho were commenced by the United States Immigration and Customs Enforcement ("USICE") agency on April 29, 2003, while Camacho was in state custody.  Camacho did not file his petition for naturalization until March 24, 2004, after the removal proceedings began.  On December 13, 2004, the Immigration Judge denied Camacho's 212(c) petition and found him subject to removal. Camacho appealed the decision to the Board of Immigration Appeals, who affirmed on May 9, 2005.  Camacho has a final removal order.

[2]Camacho has four children and four grandchildren, who are all United States citizens.

[3]Camacho initially served with the Army from 1974 to 1976 and re-enlisted with the Navy from 1978 to 1979.

become naturalized.[4] Camacho also contends he is a United States citizen by virtue of the information in his INS files, FBI identification records, and military records.[5] Hence, Camacho asserts he is entitled to become naturalized, despite his pending removal proceedings, because he is a military veteran.  Although Camacho has a criminal history, he contends his prior criminal history does not serve as a bar to establishing good moral character because he believed he was naturalized before any criminal conduct occurred.[6] Thus, Camacho argues he should receive a stay of removal pending litigation, a declaration that the denial of his N-400 naturalization application was improper, permission to be naturalized as he believed he was a U.S. citizen, and an order to not remove him from the country and release him from INS custody.[7]

On August 12, 2005, the United States Citizenship and Immigration Services ("USCIS") filed its memorandum in support of its denial of naturalization under 8 U.S.C. § 1440 and response to the Court's Order of July 22, 2005.  The USCIS asserts

---

[4]However, Camacho conceded at the hearing on July 22, 2005 that he never participated in a formal naturalization ceremony or received formal naturalization paperwork.

[5]The Court notes the Department of Justice, Federal Bureau of Investigation, Criminal Justice Information Services Division records indicate Camacho is a United States citizen.

[6]Camacho's criminal history consists of: multiple DWIs, parole violations, disorderly conduct, theft, burglary, and both possession and delivery of a controlled substance, specifically heroin.

[7]Camacho was released from state custody to the USICE custody on September 8, 2003.

the denial of Camacho's application for naturalization should be upheld.  The USCIS contends it denied Camacho's application for naturalization because, although Camacho was a military veteran who was eligible for naturalization at one time, he no longer is of good moral character due to his criminal history.

<u>STANDARD OF REVIEW</u>

An applicant who is denied his administrative application for naturalization pursuant to 8 U.S.C. § 1440 and has exhausted his administrative remedies is entitled to de novo review by the district court.[8]  8 U.S.C. § 1421(c) (2000); 8 C.F.R. § 336.9 (2001); *Aparicio v. Blakeway*, 302 F.3d 437, 440 (5th Cir. 2002).  On review, the court makes its own findings of fact and conclusions of law.  *Id*.  An applicant seeking naturalization must strictly comply with each and every requirement for citizenship. *See INS v. Pangilinan*, 486 U.S. 875, 884 (1988); *Fedorenko v. United States*, 449 U.S. 490, 506 (1981).  The petitioner has the burden of proof to demonstrate he possesses all the statutory qualifications for citizenship.  *Berenyi v. Dist. Dir., INS Serv.*, 385 U.S. 630, 637 (1967); *Cacho v. Ashcroft*, 325 F. Supp. 2d 1140, 1144 (D. Haw. 2004).  Any doubts regarding eligibility should be resolved in the United States'

---

[8]The Court believes Camacho's petition also asserts the impropriety of his removal from the country based on Camacho's belief that he was naturalized or is entitled to naturalization.  The Court will not review Camacho's removal order as the United States Court of Appeals for the Fifth Circuit has jurisdiction over that matter.  *See* REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (May 11, 2005).

favor and against the applicant.  *Berenyi*, 385 U.S. at 637.

## LAW AND ANALYSIS

The general naturalization statute states:

No person . . .shall be naturalized unless such applicant, (1) immediately preceding the date of filing his application for naturalization has resided continuously, . . . , within the United States for at least five years . . . , (2) has resided continuously within the United States from the date of application up to the time of admission to citizenship, and (3) during all the periods referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

8 U.S.C. § 1427(a)(1)-(3) (2000).  However, the naturalization provisions for military veterans who served during period of armed conflict differ from the general naturalization provisions.  *Compare* 8 U.S.C. §1440 (2000) *with* 8 U.S.C. § 1427 (2000).

Section 1440 provides:

Any person who, while an alien or a noncitizen national of the United States, has served . . . in an active duty status in the military . . . of the United States . . . during . . . the Vietnam hostilities, . . ., may be naturalized as provided in this section . . . , whether or not he has been lawfully admitted to the United States for permanent residence . . . .

8 U.S.C. § 1440(a).  Because Camacho served honorably in the military during the Vietnam hostilities, he is eligible for citizenship by naturalization under 8 U.S.C.

§ 1440.[9]  Section 1440 is silent with respect to section 1427's good moral character requirement.[10]  *See* 8 U.S.C. §§ 1427, 1440.  Therefore, the Court must determine whether Camacho, in his application under section 1440, is required to show "good moral character" as provided in section 1427.[11]

In *Nolan v. Holmes*, the Second Circuit exhaustively compared the statutory text and history of sections 1427 and 1440 and concluded it is reasonable to hold petitioners under section 1440 to the good moral character requirements of section 1427.  *Nolan v. Holmes*, 334 F.3d 189, 198-202 (2d Cir. 2003).  Likewise, the Second Circuit noted, at the time, the Ninth Circuit had reached the same conclusion.  *Id*. at 202 (citing *Castiglia v. INS*, 108 F.3d 1101, 1102 (9th Cir. 1997); *Santamaria-Ames v. INS*, 104 F.3d 1127, 1130 (9th Cir. 1996); *Yuen Jung v. Barber*, 184 F.2d 491, 495-96 (9th Cir. 1950)); *see also Boatswain v. Ashcroft*, 267 F. Supp. 2d 377, 386-87 (E.D.N.Y. 2003)

---

[9]Usually if an applicant under the general section 1427 is placed in removal proceedings, section 1429 prohibits consideration of the naturalization application.  *See* 8 U.S.C. § 1429.  However, section 1440 relaxes the general requirements and allows an application for naturalization despite ongoing removal proceedings.  *See* 8 U.S.C. § 1440(b); 8 U.S.C. § 1429; 8 C.F.R. § 329.2(a)(4); 8 C.F.R. § 329.2(e)(3).

[10]Good moral character is defined in 8 U.S.C. § 1101(f)(1)-(8) (2000).  However, the section also states "[t]he fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character."  8 U.S.C. § 1101.

[11]"A naturalization applicant must demonstrate, *inter alia*, good moral character . . . ."  *Aparicio*, 302 F.3d at 440 (citing 8 U.S.C. § 1427(a)(3)).

6

(deciding the good moral character requirement applies to wartime veterans).

Recently, the Fifth Circuit agreed with the Second Circuit's analysis regarding the silent tension between sections 1427 and 1440 and included a good moral character requirement in the determination of naturalization regarding war veterans under section 1440. *Lopez v. Henley*, No. 04-50728, 2005 WL 1625006, at *2, 3 (5th Cir. July 12, 2005) (pending publication).  Thus, military veterans seeking naturalization under 8 U.S.C. § 1440 must still meet the good moral character requirements of 8 U.S.C. § 1427.

Courts have also determined that "events transpiring outside of th[e] designated period may be relevant to [the good moral character] determination."  *Cacho*, 325 F. Supp. 2d at 1145 (citing *Tan v. United States Dept. of Justice, INS*, 931 F. Supp. 725, 730 (D. Haw. 1996) (citing *Yuen Jung*, 184 F.2d at 494-95)).  "'Whether the petitioner can establish that he has reformed and rehabilitated from his prior conduct is germane to the determination of whether he has established good moral character . . . .'"  *Id*. (quoting *Santamaria-Ames*, 104 F.3d at 1132); *see also Boatswain*, 267 F. Supp. 2d at 388 (allowing court to consider petitioner's prior acts to establish whether he has reformed).  But, the primary fact to be determined is the petitioner's character during the statutory time period.  *Id*.  Therefore, courts should look at whether the applicant is presently of good moral character and has demonstrated good moral character during

the year preceding the application, but other conduct by the applicant may also be examined. *See* 8 U.S.C. § 1427(e) (permitting general consideration of conduct and acts at any time); *see also* 8 C.F.R. § 316.10(b)(3)(iii).

In the instant case, the USCIS concedes section 1440 allows citizenship by naturalization notwithstanding the provisions of 8 U.S.C. § 1429 as they relate to deportability issues. However, the USCIS asserts Camacho cannot show he is eligible for naturalization because he cannot show he was or is a person of good moral character as required by 8 C.F.R. § 329.2(d) for the one year prior to his filing a naturalization application and continuing through the date of naturalization. The USCIS contends that, while Camacho's prior criminal conduct may fall outside the one year good moral character period of section 1427,[12] he has been incarcerated since 1990 due to his past conduct which is relevant to an overall determination of good moral character. Moreover, the record is replete with Camacho's prior criminal history.

In response, Camacho argues he is entitled to naturalization pursuant to section 1440 and does not have to meet the good moral character requirement. If the good

---

[12]Under section 1101(f)(8), no person shall be regarded as, or found to be, a person of good moral character "who at any time has been convicted of an aggravated felony." However, this definition may only be applied to convictions dated November 29, 1990 and later. *See Castiglia*, 108 F.3d at 1103-04.

moral character requirement applies, Camacho contends he is rehabilitated and has been of good moral character during the required period, despite his incarceration, as he believes his last conviction is outside the applicable time period. Camacho also contends he swore an oath of allegiance to the United States while in the military, which should either qualify him for naturalization or he should be considered a United States National.[13]

However, the Court notes Camacho has been continuously imprisoned from 1992 due to his aggravated felony conviction for delivery of heroin until 1999. In 1999, he suffered a parole violation and returned to custody until his transfer into USICE custody on September 8, 2003. As of the date of his naturalization application on March 24, 2003, Camacho was incarcerated for a substantial part of the good moral character period. However, section 1101(f)(7) does not appear to bar Camacho's application. *See* 8 U.S.C. § 1101(f)(7). While he may not be statutorily barred by any part of section 1101(f), the Court determines Camacho's entire criminal history and convictions may also be considered as unlawful acts that adversely reflect upon an

---

[13]The Court notes Camacho bears the burden of proof to establish he was at one time naturalized. *Pangilinan*, 486 U.S. at 884. Camacho has no evidence that would support his assertion that he was naturalized via his military service. Although he swore an oath of allegiance to the United States, this oath does not confer citizenship or nationality upon him. *See Matter of Navas-Acosta*, 23 I. & N. Dec. 586 (BIA 2003). Further, there is no authority that states Camacho became a national merely by becoming a member of the military. *See id.*

applicant's moral character.   Reviewing the administrative record, the Court notes Camacho's prior criminal history is extensive.[14]   Therefore, based on its own review of the petition, memorandum in opposition, and administrative record, the Court determines Camacho is unable to meet his burden of proof to show he is of good moral character, such that it would entitle him to be naturalized under 8 U.S.C. §§ 1427 and 1440.   Accordingly, the Court hereby

ORDERS that the Petition for Review (Instrument No. 1) filed by Jose A. Camacho ("Camacho") is DENIED and Defendant's Memorandum in Support of its Denial of Naturalization Under 8 U.S.C. § 1440 (Instrument No. 19) is GRANTED.

SIGNED at Houston, Texas, on this _____ day of August, 2005.

---

[14]According to the administrative record, Camacho was arrested for two incidents of disorderly conduct in June 1974, but was only fined for one of the encounters.  In 1977, Camacho was arrested for assault with a deadly weapon, but the case was dismissed.  Again, in 1977, Camacho received two years probation for driving while intoxicated.  On March 24, 1978, Camacho was arrested for driving under the influence of alcohol.  On April 25, 1979, Camacho was detained for exhibiting a deadly weapon or firearm.  On April 28, 1981, Camacho was arrested for assault with a deadly weapon, which was dismissed or the proceedings were suspended/diverted.  On May 3, 1984, Camacho was fined for driving while intoxicated.  In 1985, Camacho received one year probation and a fine for theft.  In the late 80's, Camacho received an eight year suspended sentence for possession of heroin, followed by seven years probation and deferred adjudication for unlawful delivery of heroin. In 1989, Camacho received two years imprisonment and a fine for burglary.  In 1992, Camacho's probation for the delivery of heroin charge was revoked, and he received twenty years confinement.  In early July 1999, Camacho was released from prison on parole. Subsequently, on July 8, 1999, Camacho received ten days confinement and $300 fine for driving while intoxicated.  On September 8, 2003, he was released from state custody and transferred into USICE custody.

SIGNED at Houston, Texas, on this 23rd day of August, 2005.

_____

DAVID HITTNER

United States District Judge

11